PHILIP A. LEWIS
Attorney at Law
Suite 1650
111 SW Fifth Avenue
Portland, OR 97204
(503) 226-3498
E-mail: phil@phillewis.com

        Attorney for Defendant


            IN THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,        )
                                 ) Case No. CR 07-535-BR
              Plaintiff,         )
                                 ) DEFENDANT BENDSHADLER'S
        v.                       ) SENTENCING MEMORANDUM
                                 )
MARCEL ROY BENDSHADLER,          )
                                 )
              Defendant.         )

I.   INTRODUCTION

        For   the   reasons   which   follow,   Mr.   Bendshadler

respectfully   submits   that   a   sentence   of   probation   is

appropriate.   Mr. Bendshadler recognizes that, in light of the

amount of relevant conduct, the fact that he denied guilt, and

that he continues to deny guilt following his conviction by a

jury, the court might at first view such a request unreasonable

to even consider.   However, as the court will see, applying the

factors set out in 18 USC § 3553(a), such a sentence would be

both reasonable and appropriate for Mr. Bendshadler.

        Mr. Bendshadler is before the court for sentencing

after having been found guilty of conspiracy to defraud the

government in violation of 18 USC § 371. Specifically, he was charged with and found guilty of engaging in a conspiracy the aim of which was to use deceit against third parties for the purpose of impeding the ability of the Internal Revenue Service to assess and collect income taxes from those third parties and/or to send back to them refunds that were not really owed.

Four others, Richard Fuselier, Joseph Saladino, Michael Mungovan, and Richard Ortt, were charged along with Mr. Bendshadler. One, Mr. Fuselier, pleaded guilty. The other four went to trial. Mr. Ortt was acquitted, and the remaining three were found guilty.

Mr. Bendshadler is the only one not yet sentenced. The sentences imposed on the others are as follows: Richard Fuselier - 21 months; Joseph Saladino - 60 months; and Michael Mungovan - 48 months.

The maximum sentence available to the court is 60 months. Although Mr. Bendshadler denies his guilt, he understands that the jury has made its findings and that the court must impose sentence accordingly.

## II.  SENTENCING GUIDELINE CALCULATIONS

Sentencing guidelines, are, of course, now merely advisory in nature. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), and the sentencing range called for by the guidelines is merely one of the factors the sentencing court must consider when imposing a sentence. 18 USC

2 -  DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

§ 3553(a)(4).

The government correctly noted in its sentencing memorandum relative to codefendant Saladino (at pages 7-8), the guidelines serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 39, 128 S. Ct. 586, 169 L. Ed.2d 445 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350, 127 S. Ct. 2456, 168 L. Ed.2d 203 (2007). Nevertheless, it is also important to note that the court in *Rita* declined to hold that the applicable sentencing guideline range be treated by the sentencing court as presumptively reasonable, and held only that should a sentence fall within the applicable guideline range a reviewing court should view it as reasonable absent good reason to do otherwise.

1.  USSG § 2T1.9(a)(2) should apply

Under the sentencing guidelines, the place to start in this case is USSG § 2T1.9.  The issue is which part of § 2T1.9 should apply.  USSG § 2T1.9(a)(1) requires reference to § 2T1.1 or § 2T1.4, as appropriate, to establish the offense level, each of which in turn require reference to the tax table set out in § 2T4.1.  By contrast, § 2T1.9(a)(2) provides for a base offense level of 10 if neither § 2T1.1 nor § 2T1.4 apply.

During the sentencing hearings of the codefendants, the government argued and the court, overruling defense

3 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

arguments, held that § 2T1.9(a)(1) should apply, with cross-references to §§ 2T1.4(a)(1) and § 2T4.1. That in turn led to a substantial increase in the base offense level.

Mr. Bendshadler does not wish to reargue the points made by counsel on behalf of codefendants Saladino, Fuselier and Mungovan, and merely adopts their positions made in both briefing and oral argument to the effect that the appropriate base offense level should be 10, applying § 2T1.9(a)(2).[1]

Mr. Bendshadler submits that, while there is a certain facial logic that § 2T1.9(a)(1), with its cross-references to §§ 2T1.4(a)(1) and 2T4.1, should apply, § 2T1.9(a)(2) is really the better fit.

First, as noted by counsel for codefendants, this case does not involve tax fraud in its usual form. There were no misrepresentations made on tax returns as to income. All income was reported. Nor were any fraudulent deductions claimed, only deductions based on a misreading of the tax code. The theory of the government's case rested on the assertion that the defendants made misrepresentations to customers of Freedom and Privacy Committee (FPC).

Second, the application of § 2T1.9(a)(1) and its related sections leads to an absurd result. It virtually

---

[1]The government has agreed that through this adoption Mr. Bendshadler has made an adequate record to preserve this issue for appeal.

eliminates the usefulness of the guideline as a factor to be considered by the court. With such an application, almost any conviction of a member of a so-called "tax protester" group under a *Klein* conspiracy theory[2] would result in a guideline range at or in excess of the maximum statutory sentence. With the two level enhancement under USSG § 2T1.9(b)(2), which would apply in most cases such as this, approximately half of the relevant conduct categories in the § 2T4.1 tax table would produce a sentencing range in excess of the maximum sentence of five years. This renders § 2T1.9(a)(1) of little practical use in cases such as the one now before the court.

For the above reasons, the court should either give little weight to the guideline calculation produced by the application of § 2T1.9(a)(1), or start with the application of § 2T1.9(a)(2), which produces a base offense level of 10. Other factors the court could then more easily consider account would be those the government stresses in this case, some of which are mentioned in other guidelines, i.e., the length of time over which the conspiracy operated, the number of returns filed, the potential tax loss, etc.

2. The PSR overstates criminal history

The PSR concludes that Mr. Bendshadler has a total of five criminal history points, placing him in Criminal History

---

[2]*United States v. Klein*, 247 F.2d 908 (2nd Cir. 1957).

5 -   DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

Category III.  Mr. Bendshadler submits that this overstates his
actual history.  All five of his criminal history points arise
from a misdemeanor conviction for carrying a concealed weapon,
which arose from him taking a knife into the county courthouse,
plus a conviction for failure to appear relative to that case.
Guilty pleas in both cases were entered during the same
proceeding.

Two of Mr. Bendshadler's five points stem from the
fact that he had spent 60 days in jail prior to his pleading
guilty and receiving what amounted to a sentence of time served.
Two more points stem from the fact that some of his involvement
with FPC took place while he was on probation relative to his
knife possession and failure to appear convictions.  And, of
course, one of the points arose from the related failure to
appear conviction.

Finally, the court records of those two convictions
indicate that they arose from uncounseled guilty pleas.  The
plea petitions merely say that he wished to represent himself.
The judgments in both cases indicate that there was standby
counsel, but the record is silent as to what role if any that
attorney played.

Accordingly, while this court can take into account
Mr. Bendshadler's criminal history, it should be given little
weight and certainly not the significance called for in the PSR.
Category III is an over representation of that history,

6 -   DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

especially in light of his mental health issues.

## III.  18 USC § 3553(a) FACTORS

18 USC § 3553(a) provides that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set out further in the statute, taking into account the nature of the offense.  Among the specified purposes are (a) to provide a general deterrence by reflecting the seriousness of the offense and promoting respect for the law; (b) to afford adequate specific deterrence to the defendant himself; (c) to protect the public; and (d) to provide the defendant with needed training, medical care or other correctional treatment "in the most effective manner," all of course within the context of the sentencing guidelines.  18 USC § 3553(a)(2).   And, of course, the court is to fashion a sentence that avoids unwarranted disparities among the sentences imposed on codefendants.

### 1.  Minor role/avoiding unwarranted disparities

There appears to be no question about Mr. Bendshadler having played a relatively small role in the conspiracy.  The presentence report (PSR) concludes that he is entitled to a four level role reduction under USSG § 3B1.2; the government admitted during closing arguments that he played a small role, Trial Tr., Vol. 11, pp. 2082-83; and the government suggested the same during codefendant Fuselier's sentencing hearing, Tr. at page 25.

Mr. Bendshadler's role was by any measure very small, especially so when compared to those of his three convicted codefendants, and even when compared to the role played by acquitted codefendant Ortt: Mr. Fuselier came up with the idea of the claim of right program as to earned income, and for a time had been marketing it through his own company, Compensation Consultants (CC), with the assistance of Mr. Ortt. Mr. Mungovan was the national sales director for FPC, worked full time actively promoting the claim of right program and other FPC products, and earned a substantial income for his efforts. And, of course, Mr. Saladino started and ran FPC, creating a national network with scores of sales representatives.[3]

In short, Messrs. Fuselier, Saladino, and Mungovan were vital to the operation of FPC. One was the inspiration and advisor, one ran FPC, and one was in charge of marketing nationwide. By contrast, Mr. Bendshadler was only one of many local representatives, and the only one prosecuted. For obvious reasons, he stood out with his eccentricities, his outspokenness, and his radio show.

Mr. Fuselier received substantial benefits (reduced relevant conduct, § 5K1.1 departure, favorable government position concerning role adjustments) in exchange for pleading

---

[3]
Mr. Mungovan once told defendant that over the course of several years he made approximately $160,000.00 per year, sometimes more. And, based on the sums received by FPC it would appear that Mr. Saladino also received substantial compensation.

8 – DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

guilty and testifying for the government. However, he never did clearly and freely admit guilt, either in his plea colloquy or when testifying at trial, or admit that the claim of right was an invalid theory or that he and others were using dishonest means to market it to unsuspecting customers. He only admitted that he had engaged in frivolous litigation for the purpose of delaying a criminal investigation. The benefit Mr. Fuselier actually provided the government was relatively small, especially in light of the fact that the government had to proceed to trial against the other four defendants, offering much the same evidence it would need to produce had Mr. Fuselier not pleaded guilty. Indeed, Mr. Fuselier remained defiant of the government with his civil litigation.

Whatever the value of his guilty plea and testimony, the fact remains that Mr. Fuselier's level of culpability in this case far exceeds that of Mr. Bendshadler's. He did not help create either the claim of right or any of the other products sold by CC or FPC, he did not help manage or operate either, and, unlike Mr. Fuselier, he did not give behind the scenes advice to Mr. Saladino. Testimony at trial was to the effect that when problems arose, such as being confronted with legal research showing the claim of right was invalid, Mr. Saladino's response was to call Mr. Fuselier for advice and reassurance. By contrast, when Mr. Bendshadler made sales or assisted people with their FPC products, the people were either

those he had met at gatherings of like minded people or who had been referred to him as the local FPC sales representative.

Mr. Bendshadler stands apart from the others in that whatever motivated him had nothing to do with personal profit or working off a grudge against the government in general or the IRS in particular.  Unlike his codefendants, he was engaged with FPC only intermittently, and made very little money from it.  It was not a large part of his daily activities and was not his main focus.  Instead, he was working at what he describes as studying and advising others as to the law, producing his weekly online radio show, and generally being, as his trial attorney correctly described, a gadfly.  Put another way, FPC was not his job and it was not his cause.  He is one to tilt at windmills, as his history shows, but this was not one of his windmills.

2.  Deterrence

Mr. Bendshadler submits that deterrence, either specific or general, is a far more difficult goal to accomplish here than in other kinds of cases.  With some kinds of crimes, such as those involving drug trafficking, other kinds of fraud (wire, mail, bank, etc.), tax evasion, and the like, one can imagine how some people might be deterred out of fear of prosecution and prison.  And even then we have available precious little evidence, if any, to support the notion of general deterrence.  We just take it as given, and accept it as an article of faith.

10 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

But, even if there is support for the theory of general deterrence with some kinds of crimes, it is something else to conclude that it applies equally to all kinds of crimes. Some, such as many sexual offenses, are committed out of problems with compulsivity and thinking errors. Others, such as the crime for which Mr. Bendshadler is being sentenced, arise out of sincerely held opinions about the law, politics and history. The fact that so many people involved in the so-called patriot, constitutionalist, and tax protestor type groups have already been prosecuted and imprisoned, and then use that to claim martyr status, contradicts the idea of general deterrence through imprisonment, at least in this kind of case.

The record in this case makes it clear that the defendants sincerely believed in what they were doing. And, if there was evidence that they did not believe in the validity of the claim of right and other FPC products, they would likely have been charged with other crimes in addition to simply the catchall conspiracy of 18 USC § 371.

3. Protecting the public/providing needed treatment

There is also the particular nature of the person now before the court for sentencing. While Mr. Bendshadler has a record of criminal convictions, as noted above there is nothing about them that would indicate that he has ever lived a criminal lifestyle or harbors antisocial attitudes. Rather, his legal history is consistent with the cognitive and perceptual

11 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

distortions found in his psychological evaluation.

Aside from Mr. Bendshadler's relatively small role in the operation of FPC, he stands apart from the others by virtue of the nature and degree of his mental health diagnosis. Sending him to prison would be tantamount to attempting to treat a mental disorder with incarceration. While not to such a degree as to amount to a defense, Mr. Bendshadler's mental health is a significant mitigating circumstance and is unique to him in the context of this case.

That Mr. Bendshadler's mental health likely contributed to his involvement with FPC in a significant way is probably not in question. Rather, the issue is how that should affect the sentence. Mr. Bendshadler submits that the most logical step would be to impose a sentence of probation, with conditions similar to those suggested in the PSR. A sentence of incarceration would not address his mental health issues, and could quite likely render them more resistant to treatment. Rather, it would make more sense to require that he cooperate with an appropriate regimen of counseling coupled with medication if medically appropriate.[4]

---

[4]

Counseling would of course be aimed at addressing Mr. Bendshadler's particular mental health issues rather than changing his political views. That he can be amenable to counseling is shown by his attitude toward his past treatment as described in the PSR at paragraph 91, something he said he "loved" and as it helped him to focus.

12 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

More than anything, a sentence of probation with special conditions aimed at addressing Mr. Bendshadler's mental health issues would deter any such future involvement with tax avoidance organizations. His mental health problems appear to be, based on the evaluation submitted to the court, long standing in nature. And, it appears that his prior difficulties were never so serious as to require a serious evaluation, much less any effort towards treatment.

Mr. Bendshadler is by nature a rule follower. His problem has largely been one of having difficulty interpreting the rules in the same way as others interpret them, which sometimes has led to legal difficulties. And, he pushes boundaries. All of which is consistent with his mental health diagnosis. Witness his conflict with the authorities several years ago over the matter of carrying a knife into the Multnomah County Courthouse.[5] And, of course, there is the very nature of this case.

It is also noteworthy that Mr. Bendshadler has to date been the only defendant in this case who did not need to be warned about filing his own pleadings. He might have a minority view about the jurisdiction of the court, but he recognizes the

---

[5]

The PSR notes that Mr. Bendshadler was under the watchful eye of courthouse security as he had been identified as a "court obstructor," further supporting the long standing nature of his mental health issues.

13 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

need to show it respect and to let his attorneys do their job.
He made all of his court appearances, has stayed in regular
contact with both his prior and current attorney, and has
generally been very engaged in his case.  Early on in the case
Pretrial Services released him from any sort of supervision.
And, it appears that he is also the only defendant in this case
to have paid the mandatory $100.00 assessment prior to
sentencing.  This shows that he is capable of complying with
clearly stated directions.

## IV.   PLACE OF CONFINEMENT

If the court does sentence Mr. Bendshadler to a term
of confinement, it is respectfully requested that the court
recommend to the Bureau of Prisons that it designate the camp at
Sheridan as his place of confinement.  In the alternative, if he
cannot be placed at the camp at Sheridan, he requests that he be
placed at the FDC at Sheridan so he can be close to his wife,
who otherwise would not have the resources to see him.  And, if
he cannot be placed at either of the facilities at Sheridan, Mr.
Bendshadler requests that the court recommend that he be placed
at a camp, his concern being one of safety given his
personality, his mental health disorder, and his susceptibility
to injury to his delicate back.

## V.   CONDITIONS OF SUPERVISION

Mr. Bendshadler has no objections to the proposed
terms of supervised release set out in the PSR, which of course

14 - DEFENDANT BENDSHADLER'S SENTENCING MEMORANDUM

could also be ordered as conditions of probation.  However, he suggests two small changes.

First, with respect to proposed condition #5 (psychotropic medication), Mr. Bendshadler would ask that in addition to the reference to the medication being medically approved that it also indicate that it be after consultation with him for his thoughts on the issue.  This would not make his consent a condition, but it would at least require his input.

Second, with respect to proposed condition #7 (filing tax returns), it is suggested that the language of the condition be that Mr. Bendshadler shall file returns if he has sufficient income, and that on a quarterly basis he disclose to his probation officer all income of whatever kind or nature.  Given his lack of employment history, along with his mental health issues, it is unlikely that while under supervision he will obtain an income producing job.

Respectfully submitted this 18th day of August, 2010.

PHILIP A. LEWIS, OSB #78284
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing defendant's sentencing memorandum on the attorneys listed below on August 18, 2010, by sending a copy thereof via electronically at their last known e-mail address, to-wit:

1.    Allan Garten
      E-mail:allan.garten@usdoj.gov
        Attorney for Plaintiff

2.    Michelle Kerin
      E-mail:michelle.kerin@usdoj.gov
        Attorney for Plaintiff


DATED:  August 18, 2010.

                              PHILIP A. LEWIS, OSB #78284
                              Attorney for Defendant